Max Federman (AZ S.B. #040246)
**BRIAN TED JONES, PC**
719 N Shartel Ave
Oklahoma City, OK 73102
T: (405) 843-9909
E: max.federman@briantedjones.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **ELYSE TUENNERMAN, JUSTIN ALICEA, BROOKE TRUDEAU, AND JORDAN NELSON**, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **FLOWERS FOODS, INC.**, a Georgia corporation; and its subsidiaries, **FLOWERS BAKERIES, LLC**, a Georgia limited liability company, **DAVE'S KILLER BREAD INC.**, an Oregon corporation, and **CANYON BAKEHOUSE, LLC** a Colorado limited liability company, <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Elyse Tuennerman, Justin Alicea, Brooke Trudeau, and Jordan Nelson (collectively "Plaintiffs"), individually and on behalf of all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through undersigned counsel, file this Class Action Complaint against Flowers Foods, Inc. and its subsidiaries Flowers Bakeries, LLC, (together with Flowers Foods, Inc. "Flowers"), Dave's Killer Bread, Inc. ("DKB"), and Canyon Bakehouse, LLC. ("Canyon") (collectively herein "Defendants"), and allege the following based on personal knowledge of facts, upon information and belief, and on the investigation of counsel as to all other matters.

## I.    NATURE OF THE ACTION

1.    This consumer protection class action arises from Defendants' uniform practice of marketing low-density polyethylene #4 plastic film ("4 LDPE") bread and bakery bags as recyclable, even though the packaging is not recyclable in real-world conditions through ordinary curbside or municipal recycling systems. This labeling practice violates consumer protection, false advertising, and related state statutes.

2.    Recycling offers substantial benefits by reducing the amount of waste that ends up in landfills, whether in Arizona, California, or throughout the United States. It saves natural resources and energy and can add value to local economies.

3.    However, plastic waste is an increasingly dire problem. As plastics break down into micro- and nano-plastics, they are increasingly found in the air, clouds, water, soil, sea life, and almost every human organ.[1]

4.    Plastic recycling rates remain extremely low, and the availability of recycling infrastructure varies significantly by material type. The U.S. recycling rate for plastic is estimated at only approximately five to six percent, and the most viable domestic recycling markets are generally limited to plastics marked as #1 and #2, such as plastic bottles and milk jugs. Soft plastics, including low-density polyethylene ("LDPE") plastic film Defendants use for bread and

---

[1] *See* Stephanie Dutchen, Microplastics Everywhere: The Tiny Particles Are Even in Our Bodies. What Might this Mean for Our Health?, Harvard Med. (Spring 2023), https://magazine.hms.harvard.edu/articles/microplastics-everywhere (last visited June 16, 2026); *see also* Making Plastic Polluters Pay: How Cities and States Can Recoup the Rising Costs of Plastic Pollution, Cent. for Int'l Env't Law (June 2024), https://www.ciel.org/wp-content/uploads/2024/06/make_polluters_pay_cities_states_recoup_costs_plastic_pollution_report.pdf (last visited June 16, 2026).

bakery bags, generally lack the same viable recycling markets and are not accepted through ordinary municipal recycling systems.[2]

5.      Globally, the majority of consumers believe that the most important step they can personally take to reduce greenhouse gas emissions is to recycle as much as possible.[3]

6.      Arizonans and Californians commit significant resources to recycling.  However, their recycling systems experience significant contamination and waste.

7.      For example, Arizona annually diverts approximately twenty percent of its waste through recycling, and in 2022, Arizona citizens recycled at least 841,000 tons of waste.[4] Contaminants, such as plastic film bags from Defendants, that are placed in the recycling systems due to false recyclability representations costs taxpayers thousands of dollars every month and causes approximately 30% of recycling contamination.[5]

---

[2] The Fraud of Plastic Recycling: How Big Oil and the Plastics Industry Deceived the Public for Decades and Caused the Plastic Waste Crisis, Cent. for Climate Integrity, 2 (Feb. 2024), https://dataspace.princeton.edu/handle/88435/dsp01jm214s55k (last visited June 16, 2026) ("While a minority of municipal recycling programs across the country may collect plastics with RICs #3-7, they do not actually recycle them."); What's the Right Way to Recycle Plastic Bags and Bubble Wrap (AKA Plastic Film Packaging)? America's Plastic Makers, https://plasticmakers.org/whats-the-right-way-to-recycle-plastic-bags-and-wraps/ (last visited June 15, 2026).

[3] Perils of Perception: Environmental Perils, IPSOS, 8 (Apr. 2021), https://www.ipsos.com/sites/default/files/ct/news/documents/2021-04/Environmental%20Perils%20of%20Perception%202021_0_0.pdf (last visited June 15, 2026).

[4] Major Arizona Municipalities Are Below the National Recycling Rate, Arizona PIRG Education Fund (Nov. 15, 2018), https://pirg.org/arizona/edfund/media-center/major-arizona-municipalities-are-below-the-national-recycling-rate/ (last visited June 15, 2026); 2022 Arizona Municipal Recycling Data Report, Ariz. Dep't Env't Quality ("ADEQ"), https://static.azdeq.gov/wqd/recy/2022_recycling_data.pdf (June 15, 2026); Contaminated recycle bins are costing Tucson taxpayers $30k every month, Arizona KGUN 9 News, Fernandez, Caleb, https://www.kgun9.com/news/local-news/contaminated-recycle-bins-are-costing-tucson-taxpayers-30k-every-month ("30% of the material put in [recycling bins] is not recyclable" including plastic bags).

[5] Id.

8.      A 2020 West Coast Contamination Initiative report by The Recycling Partnership found that California cities with populations of 50,000 or more reported inbound curbside recycling contamination rates ranging from 8% to 46%, with an average contamination rate of approximately 20%. This contamination reduces the amount of material that can be successfully recovered and increases the likelihood that otherwise recyclable materials will be rejected, downcycled, or sent to landfills or incinerators.[6]

9.      Consumers have become increasingly aware of the problems associated with pollution and plastic waste, and many consumers actively seek to purchase products that are recyclable to help divert waste from landfills, waterways, oceans, communities, and incinerators.

10.     Many items marketed as recyclable cost more money than the more traditional, non-recyclable products, and consumers are willing to pay a premium to purchase products that are recyclable.[7]

11.     Consumers often rely on industry representations to determine which materials can and cannot be recycled.[8]

12.     Defendant Flowers Foods, Inc. is one of the largest producers of packaged bakery products in the United States and owns, controls, manufactures, markets, distributes, and/or sells

---

[6] West Coast Contamination Initiative Research Report, The Recycling Partnership, 6, 9-10 (Apr. 2020), https://recyclingpartnership.org/wp-content/uploads/2020/04/The-Recycling-Partnership_WCCI-Report_April-2020_Final.pdf (last visited June 15, 2026).
[7] See PwC May 15, 2024 Press Release, https://www.pwc.com/gx/en/news-room/press-releases/2024/pwc-2024-voice-of-consumer-survey.html (last visited June 29, 2026); see also Shorr 2025 Sustainable Packaging Consumer Report, January 30, 2025, https://www.shorr.com/resources/blog/sustainable-packaging-consumer-report/ ("A majority of consumers (90%) are more likely to buy from brands with sustainable packaging.").
[8] Id.

packaged bread and bakery products under multiple consumer brands, including Dave's Killer Bread, Canyon Bakehouse, and Nature's Own, (collectively "Subsidiary Brands").[9]

13.    Defendants' plastic film bread bags are not accepted by ordinary material recovery facilities ("MRFs") that municipalities utilize for recycling. Instead, the plastic film packaging Defendants use and advertise as recyclable interferes with the recycling process, damages sorting equipment, and often causes otherwise recyclable materials to be diverted to landfills or incinerators.[10]

14.    Across Defendants' challenged product lines, Defendants use LDPE #4 plastic film bread bags and communicate to reasonable consumers that the bags are recyclable through curbside and/or municipal MRFs. However, the plastic Defendants use for packaging their products is not recyclable through nearly any curbside or municipal MRF system.[11]

15.    Defendants knew that consumers were willing to pay more for their products, partly due to their recyclability representations and sustainability messaging.

16.    Defendants deceptively marketed their packaging as recyclable through the use of widely recognized recycling indicia, including the "chasing arrows" recycling symbol and/or

---

[9] Other subsidiary entities of Flowers Foods include, but is not limited to: Wonder a/k/a Wonder Bread, Captain John Derst's, Evangeline Maid, European Bakers, Butternut, Mi Casa, Bunny Bread, Sunbeam, Merita, HomePride, Papa Pita, Great Grains, Bubba's, Tastykake, Mrs. Freshly's, and Simple Mills. *See* Brands, Flowers Foods, https://flowersfoods.com/brands/ (last visited June 15, 2026).

[10] Answering the Call: A Coalition Committed to Transforming Film and Flexibles Recycling, The Recycling Partnership, https://recyclingpartnership.org/film-and-flexibles/ (last visited June 15, 2026).

[11] The overwhelming majority of U.S. MRFs do not accept plastic film at all. A 2019–2020 survey of all 367 operating U.S. MRFs conducted by Greenpeace and The Last Beach Cleanup found that plastic bags and film (HDPE #2 / LDPE #4) were accepted at only 4% of U.S. MRFs (13 of 367). *See* Greenpeace Reports, A Comprehensive U.S. Survey of Plastics Recyclability, https://storage.googleapis.com/planet4-usa-stateless/2024/12/c1efba9a-greenpeace-report-circular-claims-fall-flat.pdf

stating, "PLEASE RECYCLE OR REUSE THIS BAG" or "THIS PACKAGE IS RECYCLABLE."

17.    Defendants capitalized on consumers' desire to recycle by marketing their products' packaging as recyclable and appropriate for standard municipal MRFs. In reality, Defendants knew the product packaging it marketed was not recyclable. Defendants knew consumers would dispose of the LDPE products through standard curbside and/or municipal MRFs.

18.    Defendants do not simply identify the plastic resin used in their packaging; they direct consumers such as Plaintiffs and the Class to recycle the bag and turn recycling into an advertising function.

19.    Defendants omit material limitations from their packaging. Defendants do not disclose that the packaging is not accepted in ordinary curbside recycling programs, that recycling options for LDPE film are limited, or that placing the bags into ordinary recycling streams may interfere with the recycling of other materials.[12] In other words, rather than contributing to recycling, Defendants' products in fact hinder recycling overall.

20.    Against that backdrop, Defendants' recyclability representations influence reasonable consumers. A reasonable consumer purchasing a premium bread product marketed through values-based messaging is more likely to understand the recyclability branding on the bags as part of Defendants' broader responsible-consumption message.[13]

---

[12] See Talking Trash at the FTC: Recyclable Claims and the Green Guides, May 23, 2023, at p. 9, 21, 46, 51, 55, https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-Recyclable-Claims-and-the-Green-Guides.pdf

[13] See https://flowersfoods.com/corporate-responsibility/, Flowers Foods Corporate Responsibility Report, https://flowersfoods.com/wp-content/uploads/2025/08/Flowers-Foods-2024-Corporate-Responsibility-Report.pdf.

21.     Consumers, including Arizona and California consumers, are increasingly motivated to purchase products with environmentally responsible packaging and are willing to pay a premium for such products.[14]

22.     Defendants exploit this demand by falsely and misleadingly marketing their packaging as recyclable, when in fact it is not recyclable in any meaningful or practical sense.

23.     Plaintiffs bring this action on behalf of themselves, an Arizona Class, and a California Class, of similarly situated consumers who purchased Defendants' products and were injured by Defendants' false, deceptive, misleading, and unlawful recyclability representations.

24.     Plaintiffs and Class Members purchased Defendants' products and paid more for the products than they otherwise would have paid—or would not have purchased—absent Defendants' false and misleading recyclability representations and omissions.

25.     Plaintiffs seek damages, restitution, disgorgement, injunctive relief, declaratory relief, attorneys' fees, costs, and all other relief available under law on behalf of themselves and the proposed Classes.

## II.  THE PARTIES

26.     Plaintiff Elyse Tuennerman ("Tuennerman") is a U.S. citizen domiciled in Phoenix, Arizona. Plaintiff purchased Dave's Killer Bread, Canyon Bakehouse, and Nature's Own products in Arizona bearing the misleading recyclability representations, in part because she believed it was recyclable. Before purchasing the products, Plaintiff saw and relied on the challenged packaging representations, including the chasing arrows recycling symbol, and/or the statement "PLEASE

---

[14] *See* Plastic Bag Manufacturers Investigation Concludes: Attorney General Bonta Announces Settlement, Files Lawsuit, CA Attorney General Press Release October 17, 2025, https://oag.ca.gov/news/press-releases/plastic-bag-manufacturers-investigation-concludes-attorney-general-bonta.

RECYCLE THIS BAG" and/or "PLEASE RECYCLE OR REUSE THIS BAG." Plaintiff understood these representations to mean that the packaging was recyclable through ordinary curbside municipal recycling programs.

27. Plaintiff Justin Alicea ("Alicea") is a U.S. citizen domiciled in San Francisco, CA. Plaintiff purchased Nature's Own products in California bearing the misleading recyclability representations, in part because he believed it was recyclable. Before purchasing the products, Plaintiff saw and relied on the challenged packaging representations, including the chasing arrows recycling symbol. Plaintiff understood these representations to mean that the packaging was recyclable through ordinary curbside municipal recycling programs.

28. Plaintiff Brooke Trudeau ("Trudeau") is a U.S. citizen domiciled in Los Osos, CA. Plaintiff purchased Dave's Killer Bread and Nature's Own products in California bearing the misleading recyclability representations, in part because she believed it was recyclable. Before purchasing the products, Plaintiff saw and relied on the challenged packaging representations, including the chasing arrows recycling symbol, and/or the statement "PLEASE RECYCLE OR REUSE THIS BAG." Plaintiff understood these representations to mean that the packaging was recyclable through ordinary curbside municipal recycling programs.

29. Plaintiff Jordan Nelson ("Nelson") is a U.S. citizen domiciled in Pleasant Hill, CA. Plaintiff purchased Dave's Killer Bread products in California bearing the misleading recyclability representations, in part because he believed it was recyclable. Before purchasing the products, Plaintiff saw and relied on the challenged packaging representations, including the chasing arrows recycling symbol, and/or the statement "PLEASE RECYCLE OR REUSE THIS BAG." Plaintiff understood these representations to mean that the packaging was recyclable through ordinary curbside municipal recycling programs.

8

30. Defendant **Flowers Foods, Inc.** is a Georgia corporation with its principal place of business located at 1919 Flowers Circle, Thomasville, GA 31757. Defendant's registered agent is Corporation Service Company located at 7955 S Priest Dr., Suite 102, Tempe, AZ, Maricopa, 85284, United States. Flowers Foods is publicly traded on the New York Stock Exchange under the ticker symbol FLO. [NYSE: FLO]. It is a leading manufacturer and seller of bakery goods in the United States with gross profits of over $2.569 billion in 2025 (and of over $776 million in the first quarter alone of 2026).[15] This entity establishes layers of national and regional subsidiaries. Flowers Foods, Inc. owns, controls, manufactures, markets, distributes, and/or sells packaged bakery products throughout the United States, including multiple bakeries and/or distribution points in Arizona and California. Flowers Foods, Inc. is the parent corporation for the other Subsidiary Defendants including Dave's Killer Bread, Canyon Bakehouse, and Flowers Bakeries, LLC (Nature's Own) (the "Subsidiary Defendants"). Flowers Foods also owns or controls other nationally recognized packaged bakery brands, further demonstrating its nationwide market presence and sophistication in consumer packaging, labeling, and marketing.

31. Defendant **Flowers Bakeries, LLC**, is a Georgia limited liability company with its principal place of business in Thomasville, Georgia.[16] Defendant's registered agent is Corporation Service Company located at 7955 S Priest Dr., Suite 102, Tempe, AZ, Maricopa, 85284, United States. This entity is the Flowers Foods subsidiary that is charged with sales-related activities.[17] It

---

[15] *See* generally https://www.macrotrends.net/stocks/charts/FLO/flowers-foods/gross-profit.
[16] **Nature's Own** is a flagship brand whose trademark is owned and products produced by Flowers Bakeries Brands, LLC which is a direct subsidiary of Flowers Foods, Inc.
[17] One step further down the Flowers' chain is the local Direct Store Delivery ("DSD") subsidiaries such as non-parties Flowers Baking Co. of California, LLC and Flowers Baking Co. of Modesto, LLC. These entities' only member is Flowers Bakeries, LLC (who in turn is entirely owned by Flowers Foods). These local subsidiaries are set up to execute the policies and instructions passed

9

negotiates with retailers on things such as price, shelf space, and service requirements and upon information and belief is responsible for the production of the bags used by other Subsidiary Defendants.

32.     Defendant **Dave's Killer Bread, Inc.** is an Oregon corporation with its principal place of business in Milwaukie, Oregon. Defendant's registered agent is Corporation Service Company located at 7955 S Priest Dr., Suite 102, Tempe, AZ, Maricopa, 85284, United States. Dave's Killer Bread, Inc. is a subsidiary or controlled entity of Flowers Foods, Inc. Dave's Killer Bread, Inc. manufactures, markets, distributes, labels, advertises, and/or sells Dave's Killer Bread products throughout the United States, including in Arizona and California.

33.     Defendant **Canyon Bakehouse, LLC** is a subsidiary entity of Flowers Foods, Inc. Upon information and belief, Canyon Bakehouse, LLC may be served through its parent corporation, Flowers Foods, Inc. Canyon Bakehouse products are manufactured, marketed, distributed, labeled, advertised, and/or sold throughout the United States, including in Arizona and California.

### III.     JURISDICTION AND VENUE

34.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of

---

down from the higher-level Flowers entities (the Defendants). Each local subsidiary has a president, a vice president of sales, and a director of distributor relations, along with several directors of sales/sales managers. These employees execute sales and pricing agreements as well as visit the actual brick-and-mortar locations that Flowers has contracted to service to keep up customer relationships and ensure the Delivery Employees are meeting their needs as specified in the Flowers Foods negotiated contracts. Additional non-party Arizona entity subsidiaries of Flowers include: Fast Food Services, Inc., Holsum Bakery, Inc., Holsum Bakery of Tolleson, LLC, and Holsum Holdings, LLC (collectively "Holsum"). Holsum operates two bakeries in the Phoenix, Arizona area and serves customers in Arizona, and southern California.

$5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) numerous Class Members are citizens of a different state that is diverse from the Defendants, and (4) there are more than 100 Class Members.

35.    This Court has specific personal jurisdiction over Defendants because Defendants purposefully manufacture, market, distribute, advertise, and sell the challenged products in Arizona; Defendants' challenged representations reached consumers in Arizona; Defendants operate two commercial bakeries and a distribution hub in Arizona; Plaintiffs purchased the challenged products in Arizona; and Plaintiffs' claims arise from Defendants' conduct in connection with the sale, labeling, and advertisement of products in Arizona.

36.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and/or omissions giving rise to Plaintiffs' claims occurred in this District, including Defendants' production, packaging, distribution and sale of the challenged products, Plaintiffs' purchase of the misrepresented products in this District and exposure to Defendants' false and misleading recyclability representations.

## IV.    FACTUAL ALLEGATIONS

### A. Defendants' Recycling Representations

37.    Defendant Flowers Foods, Inc. is the parent company of, or otherwise controls, the subsidiary Defendants, brands, and entities responsible for the challenged packaging, labeling, marketing, distribution, and sale of the challenged products.

38.    Upon information and belief, Flowers controls, approves, authorizes, directs, or materially participates in packaging, labeling, sustainability messaging, setting brand standards,

distributing, and marketing for the challenged products.[18]

39. Defendants market and sell packaged bread and bakery products throughout Arizona, California, and the United States using LDPE #4 plastic film bags.

40. Defendants' misleading packaging displays the chasing-arrows recycling symbol, the statement "PLEASE RECYCLE OR REUSE THIS BAG," "THIS PACKAGE IS RECYCLABLE" and/or substantially similar recyclability representations.

41. These representations appear across multiple product lines and packaging designs.

42. Defendant Flowers Foods Corporate Responsibility Report states "[m]any of our packaging items, such as polyethylene bread bags … are made of 100% recyclable materials."[19]

**Dave's Killer Bread**

43. Examples of the misrepresentations made on Dave's Killer Bread products are attached as Exhibits B-1 through B-21.[20] In sum:

a. Defendants market and sell Dave's Killer Bread products throughout Arizona, California, and the United States using LDPE #4 plastic film bags. The challenged packaging displays the chasing-arrows recycling symbol, and the statement "PLEASE RECYCLE OR REUSE THIS BAG."[21]

b. These representations appear across multiple Dave's Killer Bread product lines and packaging designs, including bread loaves, buns, rolls, bagels, English muffins, and

---

[18] *See* Flowers Foods Corporate Responsibility Report ("CRR"), https://flowersfoods.com/about-flowers/operations/ (Last visited June 18, 2026).
[19] *See* CRR https://flowersfoods.com/corporate-responsibility/, 2024 Report, p. 25 (Note there is a disclosure in the Report not included on the bags that says "*Packaging materials are recyclable where collection and recycling programs exist").
[20] *See* Exhibits B-1 through B-21.
[21] *Id.*

other bakery products.[22]

c. The challenged recycling representations are displayed on product packaging in proximity to other consumer-facing claims, product information, and/or disposal-related information. The recycling symbol is not presented as a mere technical resin identification code. In context, it appears as part of a consumer-facing recyclability message.

d. The instruction "PLEASE RECYCLE OR REUSE THIS BAG" is an affirmative directive telling consumers how to dispose of the packaging.

e. By using the phrase "PLEASE RECYCLE," Defendants encourage consumers to place the packaging into standard recycling systems.

f. Defendants do not disclose on the challenged packaging that the bags are not accepted in ordinary curbside recycling programs and are unable to be processed at MRFs. Defendants do not disclose on the challenged packaging that LDPE film can disrupt recycling systems and contaminate otherwise recyclable materials or cause MRFs to shut down in order to clear LDPE #4 bags, such as Defendants' bags, from recycling machinery.

g. Defendants do not direct consumers to a store drop-off program or other limited alternative collection pathway where the packaging may, in fact, be recycled.

h. Defendants do not qualify their recyclability representations by stating "check locally," "not recyclable in many communities," "store drop-off only where available," or similar limiting language. Defendants' packaging therefore creates

---

[22] *Id.*

13

the false and misleading net impression that the packaging is recyclable through ordinary municipal recycling programs.

**Canyon Bakehouse**

44.     Examples of the misrepresentations made on Canyon Bakehouse products are attached as Exhibits A-1 through A-9.[23] In sum:

a.  Defendants market and sell Canyon Bakehouse products throughout Arizona, California, and the United States using LDPE #4 plastic film bags. The challenged packaging displays the chasing-arrows recycling symbol, and states "THIS PACKAGE IS RECYCLABLE."[24]

b.  These representations appear across multiple Canyon Bakehouse product lines and packaging designs, including bread loaves, bagels, and other bakery products.[25]

c.  The challenged recycling representations are displayed on product packaging in proximity to other consumer-facing claims, product information, and/or disposal-related information. The recycling symbol is not presented as a mere technical resin identification code. In context, it appears as part of a consumer-facing recyclability message.

d.  The instruction "THIS PACKAGE IS RECYCLABLE" is an affirmative directive telling consumers how to dispose of the packaging.

e.  By using the phrase "THIS PACKAGE IS RECYCLABLE" Defendants encourage consumers to place the packaging into standard recycling systems.

---

[23] *See* Exhibits A-1 through A-9.
[24] *Id*.
[25] *Id*.

f.   Defendants do not disclose on the challenged packaging that the bags are not accepted in ordinary curbside recycling programs. Defendants do not disclose on the challenged packaging that LDPE film can disrupt recycling systems and contaminate otherwise recyclable materials.

g.   Defendants do not direct consumers to a store drop-off program or other limited alternative collection pathway.

h.   Defendants do not qualify their recyclability representations by stating "check locally," "not recyclable in many communities," "store drop-off only where available," or similar limiting language. Defendants' packaging therefore creates the false and misleading net impression that the packaging is recyclable through ordinary municipal recycling programs.

**Nature's Own**

45.   Examples of the misrepresentations made on Nature's Own products are attached as Exhibits C-1 through C-23.[26] In sum:

a.   Defendants market and sell Nature's Own products throughout Arizona, California, and the United States using LDPE #4 plastic film bags. The challenged packaging displays the chasing-arrows recycling symbol.[27]

b.   This representation appears across multiple Nature's Own product lines and packaging designs, including bread loaves and other bakery products.[28]

c.   The challenged recycling representations are displayed on product packaging in

---

[26] *See* Exhibits C-1 through C-23.
[27] *Id*.
[28] *Id*.

proximity to other consumer-facing claims, product information, and disposal-related information. The recycling symbol is not presented as a mere technical resin identification code. In context, it appears as part of a consumer-facing recyclability message.

**d.** The implicit instruction from utilizing the chasing arrows recycling representation is an affirmative directive telling consumers how to dispose of the packaging.

**e.** By using the chasing-arrows recycling representation Defendants encourage consumers to place the packaging into standard recycling systems.

**f.** Defendants do not disclose on the challenged packaging that the bags are not accepted in ordinary curbside recycling programs. Defendants do not disclose on the challenged packaging that LDPE film can disrupt recycling systems and contaminate otherwise recyclable materials.

**g.** Defendants do not direct consumers to a store drop-off program or other limited alternative collection pathway.

**h.** Defendants do not qualify their recyclability representations by stating "check locally," "not recyclable in many communities," "store drop-off only where available," or similar limiting language. Defendants' packaging therefore creates the false and misleading net impression that the packaging is recyclable through ordinary municipal recycling programs.

**B. Consumers Rely on Recyclability Representations**

46.    Plastic waste poses a significant environmental challenge, and consumers increasingly rely on product labeling to determine whether packaging is recyclable. Consumers often rely on industry representations, symbols, and instructions to determine which materials can

and cannot be recycled. Consumers seek out products with environmentally responsible packaging and are willing to pay a premium for products they believe are recyclable or more environmentally responsible.[29]

47. Recycling symbols and express recycling instructions are material to reasonable consumers because they communicate information about the environmental attributes and end-of-life disposal of the product packaging. A reasonable consumer seeing the instruction "PLEASE RECYCLE OR REUSE THIS BAG," "THIS PACKAGE IS RECYCLABLE," and/or a chasing-arrows recycling symbol would understand that the packaging is recyclable through ordinary recycling systems when it is not.

48. Defendants knew or should have known that consumers rely on recycling symbols and express recycling instructions when deciding whether packaging is recyclable and how to dispose of it. Defendants also knew or should have known that consumers interpret the chasing arrows symbol and express recycling instructions as representations that a package is recyclable.

49. Defendants also knew or should have known that consumers do not typically distinguish between a resin identification code and an affirmative recyclability representation, particularly where the code appears alongside an express instruction to recycle.

50. Defendants' packaging expressly instructs consumers to "PLEASE RECYCLE OR REUSE THIS BAG," "THIS PACKAGE IS RECYCLABLE" and/or displays a chasing-arrows

---

[29] *See* The Recycling Partnership, Consumer Research on Recycling Behavior and Attitudes Regarding On-Pack Labeling, March 10, 2023, https://recyclingpartnership.org/consumer-research-on-recycling-behavior-and-attitudes-regarding-on-pack-labeling/ (last visited June 18, 2026).

symbol, without any adequate front-label qualification concerning the recyclability of the packaging.[30]

## C. LDPE Plastic Film Is Not Recyclable

51.    Defendants do not qualify their recyclability representations by stating "check locally," "not recyclable in many communities," "store drop-off only where available," or similar limiting language.[31] Defendants' packaging therefore creates the false and misleading net impression that the packaging is recyclable through curbside and/or ordinary municipal recycling programs when nearly all curbside programs and MRFs do not accept LDPE #4 plastic.

52.    LDPE can and often does damage recycling infrastructure, reducing overall recycling.

53.    LDPE plastic film is thin, flexible, and lightweight. MRF sorting systems are designed primarily for rigid, dimensionally stable materials such as paper, glass, metal, and rigid plastics.[32]

54.    When LDPE film enters the recycling stream, it wraps around rollers, clogs screens, interferes with optical sorting equipment, and requires manual removal. LDPE film can cause MRFs to halt operations so workers can remove plastic film from equipment.[33]

---

[30] *See* Exhibits A-C.

[31] *Id.*

[32] *See* How Materials Recovery Facilities Work, Sustainable Packaging Coalition, by Leardini, Paula and LaValley, Brittany, September 2025, https://sustainablepackaging.org/wp-content/uploads/2025/09/How-MRFs-Work_SPC.pdf (last visited June 18, 2026).

[33]    *See* Rogue Recycling, August 8, 2023, https://roguedisposal.com/resources/education/recycling/understanding-why-plastic-film-cant-go-in-the-recycling-cart ("Because of its thin, stretchy, clingy nature — which makes it useful for packaging purposes — plastic film is difficult to recycle without specialized equipment. When mixed with other recyclables and run through machines today, plastic film tangles the mechanisms and jams the machines used to sort recyclables — endangering workers who put themselves at risk trying to clean it out of the equipment at the materials sorting facility.")

18

55.     For this reason, LDPE film is treated as a contaminant by MRF systems and is excluded from curbside recycling programs.[34]

56.     Even China, historically the largest foreign market for U.S. plastic scrap, sharply restricted imports of low-quality and contaminated plastic recyclables after implementing its National Sword policy. China's restrictions included a 0.5% contamination limit and an outright ban on many recyclable imports, including plastics. The resulting loss of export markets increased U.S. plastic landfilling and reduced recovery of plastic film and bags.[35]

57.     Reported recycling rates for LDPE bags and wraps overstate actual real-world recycling outcomes. The Environmental Protection Agency's ("EPA") 2018 data showed 2.78 million tons generated and 370,000 tons recycled for LDPE/LLDPE #4 plastic bags, sacks, and wraps, reflecting a reported recycling rate of approximately 13.3%.[36]

58.     However, EPA's reported recycling figures include exported plastic waste and therefore do not show that the material was actually reprocessed into new products. Independent analysis has explained that when exported plastic waste counted as "recycled" is deducted, the U.S. plastic recycling rate is materially lower.[37]

---

[34] *See* "Is Plastic Film Recyclable" updated October 29, 2025, Doshi, Saloni, https://www.ecoenclose.com/resources/thin-film-recycling?srsltid=AfmBOooOUNl0PXXZkAFmqJAOyzSM2X5NW34EAuCdajsRL3ir_HqvF5pp (last visited June 18, 2026).

[35] *See* "Impact of China's National Sword Policy on the U.S. Landfill and Plastics Recycling Industry, Vedantam, Aditya, Suresh, Nallan, Khadija Ajmal, and Shelly, Michael Sustainability 2022, https://www.mdpi.com/2071-1050/14/4/2456 (last visited June 18, 2026).

[36] *See* Advancing Sustainable Materials Management, December 2020, U.S. Environmental Protection Agency, https://19january2021snapshot.epa.gov/sites/static/files/2020-11/documents/2018_tables_and_figures_fnl_508.pdf EPA 2018 Tables and Figures, Table 8 (last visited June 18, 2026).

[37] *See* Circular Claims Fall Flat Again, 2022 Update, Greenpeace, https://storage.googleapis.com/planet4-usa-stateless/2024/11/7287b658-gpus_finalreport_2022.pdf (last visited June 18, 2026).

59.    The same independent analysis estimates current U.S. recycling/reprocessing capacity for post-consumer LDPE/LLDPE #4 plastic waste at less than 5%, further confirming that reported recycling rates overstate the real-world likelihood that LDPE film packaging will actually be recycled into new products.[38]

60.    These facts confirm that Defendants' unqualified recycling instructions to "PLEASE RECYCLE OR REUSE THIS BAG" and/or "THIS PACKAGE IS RECYCLABLE" and similar recyclability misrepresentations are misleading.

61.    LDPE plastic film bread bags are not recyclable through ordinary municipal recycling systems available to a substantial majority of consumers nationwide. In Arizona and California specifically, MRFs do not generally accept plastic bags or plastic film in curbside or widely available recycling programs.[39]

62.    When plastic film enters the recycling stream, it does not just fail to be recycled. It can interfere with the recycling of otherwise recyclable materials. Plastic film contaminates mixed recycling bales, lowers bale quality, reduces the value of recyclable materials, and causes materials that would otherwise be recycled to be diverted to landfills or incinerators.[40]

---

[38] *Id*.

[39] *See* https://www.scottsdaleaz.gov/solid-waste/trash-recycling/recycling-guidelines (last visited June 18, 2026); see also https://www.glendaleaz.gov/Community/City-Services/Trash-and-Recycling/Recycling; https://www.phoenix.gov/administration/departments/publicworks/residential-trash-recycling/residential-recycling/recycle-right-wizard.html. (last visited June 18, 2026); chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://sfbayws.org/wp-content/uploads/blog/plastic-recycling-guide.pdf (last visited June 18, 2026).

[40] *See* Talking Trash at the FTC: Recyclable Claims and the Green Guides, May 23, 2023, U.S. FTC    https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-Recyclable-Claims-and-the-Green-Guides.pdf (last visited June 18, 2026)..

**D. Defendants' Representations Are False and Misleading**

63.    Defendants' recyclability representations are false and misleading because LDPE plastic film bread bags are not recyclable through curbside or ordinary municipal recycling programs available to a substantial majority of consumers, including consumers in Arizona and California.

64.    Defendants' packaging creates the false net impression that the packaging can be placed into ordinary recycling systems.

65.    Defendants' packaging omits that the challenged bags are not accepted in ordinary curbside recycling programs or that consumers must check recycling availability in their area.

66.    Defendants' packaging omits that LDPE plastic film is a contaminant in ordinary recycling systems.

67.    Defendants omit that placing the bags into ordinary recycling streams can interfere with recycling operations and cause otherwise recyclable materials to be diverted to landfills or incinerators.

68.    Defendants' packaging omits that any potential recycling pathway for LDPE plastic film is limited, uncommon, and unavailable to most consumers through curbside or widely available ordinary municipal recycling systems.

69.    These omitted facts are material because reasonable consumers consider them important when deciding whether to purchase Defendants' products marketed as recyclable and how much to pay for them.

70.    Defendants could have used truthful, qualified language to avoid misleading consumers.

71.    Defendants could have stated that the packaging is not accepted in curbside and/or

standard recycling systems widely available in many communities and must utilize a store drop-off or other specialized recycling program.

72.    Defendants could have directed consumers to store drop-off programs where available.

73.    Defendants could have warned consumers not to place the packaging into ordinary curbside recycling bins.

74.    Instead, Defendants chose to use an unqualified recycling instruction.

75.    Defendants' challenged representations were likely to mislead reasonable consumers acting reasonably under the circumstances when the misrepresentations were made.

**E.  Defendants Knew or Should Have Known Their Representations Were Misleading.**

76.    Defendants are sophisticated participants in the consumer-packaged goods industry.

77.    Defendants manufacture, package, market, distribute, and sell consumer products throughout the United States, including in Arizona and California.

78.    Defendants knew or should have known that LDPE #4 plastic film is not accepted by ordinary municipal recycling systems, including in Arizona and California.

79.    Defendants knew or should have known that plastic film disrupts recycling operations and is treated as contamination by MRFs, including in Arizona and California.

80.    Defendants knew or should have known that consumers interpret the chasing-arrows symbol and express recycling instructions as representations of recyclability.

81.    Defendants knew or should have known that reasonable consumers would interpret "PLEASE RECYCLE OR REUSE THIS BAG" and/or "THIS PACKAGE IS RECYCLABLE" or their other misrepresentations identified herein to mean that the packaging could be recycled

through ordinary recycling systems.

82. Defendants also knew or should have known that consumers are willing to pay more for products marketed as environmentally responsible, sustainable, or recyclable.

83. Defendants nevertheless continued to market their challenged products using the challenged recyclability representations, including in Arizona and California.

84. Upon information and belief, Defendants made, approved, authorized, controlled, or ratified the challenged representations.

85. Upon information and belief, Defendants had the ability to change the challenged packaging but failed to do so.

**F.  Federal Recyclability Standards**

86. The Federal Trade Commission's ("FTC") Guides for the Use of Environmental Marketing Claims, commonly known as the "Green Guides," provide nationally recognized guidance for environmental marketing claims.

87. The Green Guides set forth the FTC's current regulations about environmental claims and help marketers avoid making environmental claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45. 16 C.F.R. § 260.1.

88. Plaintiffs do not assert an independent private cause of action under the FTC Act or the Green Guides. Rather, the FTC Act and Green Guides provide relevant standards for assessing Defendants' deceptive and misleading environmental marketing claims.

89. The Green Guides specifically address recyclable claims. Under 16 C.F.R. § 260.12(a), "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable."

90. A product or package should not be marketed as recyclable unless it can be

collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. 16 C.F.R. § 260.12(a).

91.     The Green Guides further provide that unqualified recyclable claims are appropriate only where recycling facilities are available to a "substantial majority" of consumers or communities where the item is sold. 16 C.F.R. § 260.12(b)(1).

92.     The Green Guides define "substantial majority" as at least **60 percent**. *Id.*

93.     The Green Guides also provide that if any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive. 16 C.F.R. § 260.12(d).[41]

94.     Defendants' challenged representations are inconsistent with these standards because Defendants make unqualified or inadequately qualified recyclability representations on LDPE plastic film packaging, even though that material is not accepted by ordinary municipal recycling systems available to a substantial majority of consumers and may clog or disrupt recycling equipment.

**G. Arizona Standards for Recyclability**

95.     Arizona law, through the Arizona Consumer Fraud Act ("ACFA"), prohibits deception, deceptive or unfair acts or practices, false pretenses, false promises, misrepresentations, and concealment, suppression, or omission of material facts with intent that others rely on such

---

[41] *See* 16 C.F.R. § 260.12(d) Examples 2 and 10. ("This conspicuous use of the [Resin Identification Code with the chasing arrows] constitutes a recyclable claim. Unless recycling facilities for this container are available to a substantial majority of consumers or communities, the manufacturer should qualify the claim to disclose the limited availability of recycling programs.") ("An aluminum can is labeled "Please Recycle." This statement likely conveys that the can is recyclable. If collection sites for recycling these cans are available to a substantial majority of consumers or communities, the marketer does not need to qualify the claim.") (available at https://www.law.cornell.edu/cfr/text/16/260.12).

concealment, suppression, or omission in connection with the sale or advertisement of merchandise. A.R.S. § 44-1522(A).

96.    Defendants' challenged products are "merchandise" sold and advertised to Arizona consumers.

97.    Defendants' challenged recyclability representations were made in connection with the sale and advertisement of packaged bread and bakery products to Arizona consumers.

98.    The Arizona Attorney General has challenged similar recyclability and recycling-use representations involving plastic bags. The State Attorney General alleged that plastic bags marketed as recyclable or suitable for recycling misled consumers because plastic bags are generally not accepted by ordinary recycling systems, can clog or disrupt recycling equipment, contaminate recyclable materials, and frequently end up landfilled or incinerated rather than recycled. *State ex rel. Mayes v. Reynolds Consumer Products, Inc.*, No. CV2025-029649, at ¶¶ 59-68 (Ariz. Super. Ct. Maricopa Cnty. Aug. 20, 2025).

99.    Defendants' challenged representations present the same core deception. Defendants tell Arizona consumers to recycle LDPE plastic film packaging that ordinary recycling systems do not accept, cannot process, and treat as a contaminant, causing recyclable materials to be diverted to landfills or incinerators rather than recycled.

**H.  California Standards for Recyclability**

100.    Under California law, "'recycling' means the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." Cal. Pub. Res. Code § 40180.

25

101. California law specifically regulates misleading environmental marketing claims. California's Misleading Environmental Marketing Claims law prohibits untruthful, deceptive, or misleading environmental marketing claims, whether explicit or implied. Cal. Bus. & Prof. Code § 17580.5.

102. California law further provides that "environmental marketing claim" includes any claim contained in the Federal Trade Commission's Guides for the Use of Environmental Marketing Claims, commonly known as the "Green Guides." Cal. Bus. & Prof. Code § 17580.5.

103. California law regulates recyclability claims. Cal. Pub. Res. Code § 42355.51 prohibits offering for sale, selling, distributing, or importing into California any product or packaging for which a deceptive or misleading claim about recyclability is made.

104. Under California law, displaying a chasing-arrows symbol, a chasing-arrows symbol surrounding a resin identification code, or any other symbol or statement indicating that the product or packaging is recyclable, or otherwise directing the consumer to recycle the product or packaging, is deemed a deceptive or misleading claim unless the product or packaging is considered recyclable in California and satisfies statutory criteria. Cal. Pub. Res. Code § 42355.51(b)(1).

105. For packaging containing a consumable product, such a recyclability symbol or statement is deemed to refer to the packaging. Cal. Pub. Res. Code § 42355.51(b)(3)(C).

106. California law also separately regulates non-curbside collection programs and does not treat the mere existence of a store drop-off option as sufficient to make packaging recyclable. Cal. Pub. Res. Code § 42355.51(d)(5).

107. California's statutory recyclability standard requires, among other things, that the material type and form claimed to be recyclable actually be collectable for recycling in

26

jurisdictions encompassing at least **60 percent** of California's population. The standard further requires recyclable material to be sortable into defined streams by large-volume transfer or processing facilities that collectively serve at least **60 percent** of recycling programs statewide. Cal. Pub. Res. Code § 42355.51(d)(2).

108.    California law also makes clear that "recycling," "recyclable," and "recyclability" do not include transformation, EMSW conversion, or production of fuels. Cal. Pub. Res. Code § 42355.51(f). Thus, plastic film that is incinerated, converted, or used for fuel is not "recycled" under California's recyclability framework.

109.    California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") prohibit not only false advertising, but also advertising that has the capacity, likelihood, or tendency to deceive or confuse the public. *Whiteside v. Kimberly-Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

110.    In *Whiteside*, the Ninth Circuit reaffirmed that California UCL, FAL, and CLRA claims are governed by the reasonable-consumer standard and held that, where a front-label representation is plausibly misleading, courts generally should not rely on back-label fine print to defeat the claim at the pleading stage. *Whiteside*, 108 F.4th at 778-80.

111.    Defendants' challenged representations are inconsistent with California law because Defendants make unqualified or inadequately qualified recyclability representations on LDPE plastic film packaging even though that material is not accepted by ordinary municipal recycling systems available to a substantial majority of California consumers, is not routinely sorted into defined streams for recycling into new products or packaging, and is not supported by a reliable non-curbside recovery program satisfying California's statutory recovery thresholds.

## I.    Plaintiffs and Class Members Suffered Economic Injury

### *Plaintiffs' Shared Experience*

112.    Plaintiffs and Class Members purchased Defendants' products bearing the challenged recyclability representations.

113.    Plaintiffs and Class Members paid money for products that were worth less than represented due to the false recyclability representations. Plaintiffs and Class Members paid a price premium attributable to Defendants' recyclability representations, which Plaintiffs and Class Members relied on when making their purchase.

114.    Plaintiffs and Class Members did not receive the benefit of the bargain because the products were represented as being packaged in recyclable packaging, but the packaging was not recyclable through ordinary municipal recycling systems.

## J.    Plaintiff Tuennerman' s Individual Experience

115.    During the Class Period, Plaintiff purchased Defendants Flowers Foods subsidiaries products from Dave's Killer Bread, Canyon Bakehouse, and Nature's Own, in Arizona.

116.    The products Plaintiff purchased were packaged in LDPE plastic film bearing the challenged recyclability representations.

117.    Before purchasing the products, Plaintiff saw and relied on the challenged representations, including the recycling symbol, and/or the statement "PLEASE RECYCLE OR REUSE THIS BAG" and "THIS PACKAGE IS RECYCLABLE."

118.    Plaintiff understood the challenged representations to mean that the packaging was recyclable through ordinary municipal recycling programs.

119.    Plaintiff believed that the product's packaging could be placed in ordinary recycling

systems and recycled, which is what Plaintiff did.

120.　Plaintiff would not have purchased the products, or would have paid less for them, had Plaintiff known that the packaging was not recyclable through ordinary municipal recycling systems.

121.　Plaintiff was injured because Plaintiff paid a premium price for products that were falsely and misleadingly marketed as being packaged in recyclable packaging.

122.　Plaintiff did not receive the benefit of their bargain because the products were represented as being packaged in recyclable packaging, but the packaging was not recyclable through ordinary municipal recycling systems.

123.　Plaintiff would purchase Defendants' products in the future if they discontinued their practice of including false and misleading recyclability claims on their packaging.

## K. Plaintiff Nelson's Individual Experience

124.　During the Class Period, Plaintiff purchased Dave's Killer Bread, one of Defendants Flowers Foods subsidiaries products in California.

125.　The products Plaintiff purchased were packaged in LDPE plastic film bearing the challenged recyclability representations.

126.　Before purchasing the products, Plaintiff saw and relied on the challenged representations, including the recycling symbol, and/or the statement "PLEASE RECYCLE OR REUSE THIS BAG."

127.　Plaintiff understood the challenged representations to mean that the packaging was recyclable through ordinary municipal recycling programs.

128.　Plaintiff believed that the product's packaging could be placed in ordinary recycling systems and recycled, which is what Plaintiff did.

129. Plaintiff would not have purchased the products, or would have paid less for them, had Plaintiff known that the packaging was not recyclable through ordinary municipal recycling systems.

130. Plaintiff was injured because Plaintiff paid a premium price for products that were falsely and misleadingly marketed as being packaged in recyclable packaging.

131. Plaintiff did not receive the benefit of their bargain because the products were represented as being packaged in recyclable packaging, but the packaging was not recyclable through ordinary municipal recycling systems.

132. Plaintiff would purchase Defendants' products in the future if they discontinued their practice of including false and misleading recyclability claims on their packaging.

**L. Plaintiff Trudeau's Individual Experience**

133. During the Class Period, Plaintiff purchased Defendants Flowers Foods subsidiaries products from Dave's Killer Bread and Nature's Own in California.

134. The products Plaintiff purchased were packaged in LDPE plastic film bearing the challenged recyclability representations.

135. Before purchasing the products, Plaintiff saw and relied on the challenged representations, including the recycling symbol, and/or the statement "PLEASE RECYCLE OR REUSE THIS BAG."

136. Plaintiff understood the challenged representations to mean that the packaging was recyclable through ordinary municipal recycling programs.

137. Plaintiff believed that the product's packaging could be placed in ordinary recycling systems and recycled, which is what Plaintiff did.

138. Plaintiff would not have purchased the products, or would have paid less for them,

had Plaintiff known that the packaging was not recyclable through ordinary municipal recycling systems.

139. Plaintiff was injured because Plaintiff paid a premium price for products that were falsely and misleadingly marketed as being packaged in recyclable packaging.

140. Plaintiff did not receive the benefit of their bargain because the products were represented as being packaged in recyclable packaging, but the packaging was not recyclable through ordinary municipal recycling systems.

141. Plaintiff would purchase Defendants' products in the future if they discontinued their practice of including false and misleading recyclability claims on their packaging.

**M. Plaintiff Alicea's Individual Experience**

142. During the Class Period, Plaintiff purchased Defendants Flowers Foods subsidiary's products from Nature's Own in California.

143. The products Plaintiff purchased were packaged in LDPE plastic film bearing the challenged recyclability representations.

144. Before purchasing the products, Plaintiff saw and relied on the challenged representations, including the recycling symbol.

145. Plaintiff understood the challenged representations to mean that the packaging was recyclable through ordinary municipal recycling programs.

146. Plaintiff believed that the product's packaging could be placed in ordinary recycling systems and recycled, which is what Plaintiff did.

147. Plaintiff would not have purchased the products, or would have paid less for them, had Plaintiff known that the packaging was not recyclable through ordinary municipal recycling systems.

148. Plaintiff was injured because Plaintiff paid a premium price for products that were falsely and misleadingly marketed as being packaged in recyclable packaging.

149. Plaintiff did not receive the benefit of their bargain because the products were represented as being packaged in recyclable packaging, but the packaging was not recyclable through ordinary municipal recycling systems.

150. Plaintiff would purchase Defendants' products in the future if they discontinued their practice of including false and misleading recyclability claims on their packaging.

## V. Class Action Allegations

151. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

152. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following:

a. **The Arizona Class:**

**All persons in Arizona who, during the applicable limitations period, purchased any Flowers Foods, Inc. packaged bread or bakery product, including its subsidiaries Dave's Killer Bread, Canyon Bakehouse, and/or Nature's Own packaged in LDPE #4 plastic film and bearing the chasing-arrows recycling symbol, statement to recycle, or a substantially similar recyclability representation.**

b. **The California Class:**

**All persons in California who, during the applicable limitations period, purchased any Flowers Foods, Inc. packaged bread or bakery product, including its subsidiaries Dave's Killer Bread, Canyon Bakehouse, and/or Nature's Own packaged in LDPE #4 plastic film and bearing the chasing-arrows recycling symbol, statement to recycle, or a substantially similar recyclability representation.**

153. Excluded from any Class are Defendants, their officers, directors, agents, employees, parents, subsidiaries, affiliates, trustees, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs,

successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action and their staff, any member of the judge's immediate family, and attorneys for any party in this action.

154. Plaintiffs reserve the right to amend the above definition or to propose alternative classes and/or subclasses in subsequent pleadings and motions for class certification.

155. Plaintiffs anticipate the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, electronic media can be utilized for the notice process.

156. **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds of thousands to millions of Class members.

157. **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendants' uniform misconduct. Defendants' misrepresentations throughout their products' packaging gave rise to Plaintiffs' claims and are identical to those that give rise to the claims of every other Class member because Plaintiffs and each member of the Class purchased Defendants' products due to the challenged misrepresentations.

158. **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs interests do not conflict with the interests of the Class; Plaintiffs have retained counsel competent and highly experienced in class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

159.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not efficiently manage such individualized litigation. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

160.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

    a.    Whether Defendants represented that the challenged packaging was recyclable;

    b.    Whether Defendants' recyclability representations were likely to mislead reasonable consumers;

    c.    Whether plastic film bread bags are recyclable through ordinary municipal recycling systems available to a substantial majority of consumers;

    d.    Whether plastic film bread bags advertised as recyclable violate Arizona's statutes for deceptive advertising;

e.  Whether plastic film bread bags satisfy California's statutory recyclability standard;

f.  Whether Defendants omitted material facts regarding the recyclability of the challenged packaging;

g.  Whether Defendants knew or should have known that the challenged representations were false or misleading;

h.  Whether Defendants' conduct violated Arizona's Consumer Fraud Act or California's UCL, FAL, CLRA, and Misleading Environmental Marketing Claims laws;

i.  Whether Plaintiffs and Class Members paid a price premium;

j.  Whether Defendants breached an express warranty;

k.  Whether Defendants were unjustly enriched; and

l.  Whether Plaintiffs and Class Members are entitled to damages, restitution, disgorgement, injunctive relief, declaratory relief, attorneys' fees, costs, or other relief.

m.  Common sources of evidence may also be used to demonstrate Defendants' unlawful conduct on a class-wide basis, including, but not limited to, Defendants' standardized packaging, product labels, sales records, distribution records, marketing materials, internal communications, consumer research, pricing data, and evidence concerning the recyclability of plastic film packaging.

161.  The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because: Defendants would

necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed and are representatives of that experience for the Class, and will establish the right of each Class Member to recover on the cause of action(s) alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

162.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

163.    Adequate notice can be given to Class Members directly using public media.

164.    Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

165.    Finally, members of the proposed Class are readily ascertainable and verifiable. Class Members will have purchase receipts to verify their purchase of products containing the challenged recyclability representations.

## VI.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs in the California and Arizona Classes)**

166.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

167.    Defendants are merchants that manufacture, label, advertise, market, distribute, and sell packaged bread and bakery products.

168.    Defendants made express affirmations of fact and promises on the challenged packaging, including the chasing-arrows recycling symbol, the statement "THIS PACKAGE IS RECYCLABLE", and/or the instruction "PLEASE RECYCLE OR REUSE THIS BAG."

169.    These representations became part of the basis of the bargain between Defendants and Plaintiffs and Class Members.

170.    Defendants expressly warranted that the challenged packaging was recyclable and suitable for recycling.

171.    The challenged packaging did not conform to Defendants' express warranty because LDPE plastic film bread bags are not recyclable through ordinary municipal recycling systems available to a substantial majority of consumers.

172.    The challenged packaging also did not conform to Defendants' express warranty because it does not satisfy California's statutory recyclability standard.

173.    Plaintiffs and Class Members purchased the challenged products in reliance on Defendants' express warranty.

37

174. Plaintiffs and Class Members did not receive the benefit of their bargain because the products were represented as being packaged in recyclable packaging, but the packaging was not recyclable in real-world conditions.

175. Plaintiffs and Class Members were injured because they paid for products that did not conform to Defendants' express warranty.

176. Defendants received notice of the falsity of their recyclability representations through consumer complaints, public regulatory guidance, industry knowledge, California law, enforcement actions and lawsuits concerning similar recycling representations, and the filing of this Complaint.

177. To the extent additional pre-suit notice is required, Plaintiffs provided notice consistent with applicable law.

178. Plaintiffs and Class Members are entitled to damages, restitution, and all other relief permitted by law.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the California and Arizona Classes)**

179. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

180. Plaintiffs plead this claim in the alternative.

181. Plaintiffs and Class Members conferred a benefit on Defendants by purchasing the challenged products.

182. Defendants appreciated and retained that benefit.

183. Defendants' retention of that benefit is unjust because Defendants obtained it through false, deceptive, and misleading recyclability representations and omissions.

184.    Plaintiffs and Class Members paid more for the challenged products than they otherwise would have paid absent Defendants' misconduct.

185.    Defendants were enriched by the price premium and profits obtained from the sale of products bearing the challenged recyclability representations.

186.    It would be inequitable for Defendants to retain the profits, benefits, and price premiums obtained from their deceptive and misleading conduct.

187.    Plaintiffs and Class Members are entitled to restitution, disgorgement, and all other relief permitted by law.

**THIRD CAUSE OF ACTION**
**Violation of the Arizona Consumer Fraud Act**
**A.R.S. § 44-1522(A) Deceptive Practices, Misrepresentations, Omissions, and Unfair Practices**
**<u>(On Behalf of Plaintiff Tuennerman and the Arizona Class)</u>**

188.    Plaintiff Tuennermane re-alleges and incorporate by reference all preceding factual paragraphs as though fully set forth herein

189.    Defendants are "persons" within the meaning of A.R.S. § 44-1521.

190.    The challenged products are "merchandise" within the meaning of A.R.S. § 44-1521.

191.    Defendants advertised, marketed, distributed, and sold the challenged products to Arizona consumers.

192.    In connection with the sale and advertisement of the challenged products, Defendants represented that the products' LDPE #4 plastic film packaging was recyclable.

193.    Defendants made these representations through the use of the chasing-arrows recycling symbol, the statement "THIS PACKAGE IS RECYCLABLE", and/or the statement

"PLEASE RECYCLE OR REUSE THIS BAG," and substantially similar recycling representations.

194. Defendants' representations were false, deceptive, misleading, and unfair because the challenged packaging is not recyclable through ordinary municipal recycling systems in Arizona.

195. Defendants' representations created the false net impression that Arizona consumers could place the challenged packaging in ordinary recycling streams and that the packaging would be recycled.

196. Defendants concealed, suppressed, and omitted material facts, including that the challenged packaging is not accepted in ordinary curbside recycling programs, may clog or disrupt recycling equipment, may contaminate otherwise recyclable materials, and may cause otherwise recyclable materials to be diverted to landfills or incinerators.

197. Defendants' omissions were material because reasonable Arizona consumers would consider those facts important when deciding whether to purchase the challenged products and how much to pay for them.

198. Defendants' conduct was knowing and willful. Defendants are sophisticated consumer packaged goods companies and knew or should have known that LDPE #4 plastic film is not accepted by ordinary municipal recycling systems, that plastic film disrupts MRF operations, and that consumers understand recycling symbols and recycling instructions as representations that packaging is recyclable.

199. Plaintiff Elyse Tuennerman and Arizona Class Members relied on Defendants' challenged representations and omissions.

200. Plaintiffs Elyse Tuennerman, and Arizona Subclass Members were damaged because they purchased products they otherwise would not have purchased, or paid more than they otherwise would have paid, had the truth been disclosed.

201. Defendants' conduct violated A.R.S § 44-1522(A).

202. Plaintiff and Arizona Class Members are entitled to actual damages, restitution, disgorgement where available, injunctive relief, declaratory relief, and all other relief permitted by law.

**FOURTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, et seq.**
**(On Behalf of Plaintiffs Alicea, Trudeau, Nelson and the California Class)**

203. Plaintiffs re-allege and incorporate by reference all preceding factual paragraphs as though fully set forth herein.

204. California's Unfair Competition Law ("UCL") defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising. Cal. Bus. & Prof. Code § 17200.

205. Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

206. Plaintiffs and Class Members suffered injury in fact and lost money or property as a result of Defendants' unfair competition because they purchased products they otherwise would not have purchased, or paid more for the products than they otherwise would have paid, absent Defendants' false and misleading recyclability representations and omissions.

207. Defendants violated the UCL's unlawful prong by engaging in conduct that violates, borrows from, or is otherwise made unlawful by the FAL, CLRA, Cal. Bus. & Prof. Code § 17580.5, Cal. Pub. Res. Code § 42355.51, and other applicable law.

208.    Defendants violated the UCL's fraudulent prong because their challenged recyclability representations and omissions were likely to deceive reasonable consumers.

209.    Defendants violated the UCL's unfair prong because their conduct offends established public policy favoring truthful environmental marketing and accurate recyclability labeling, causes substantial consumer injury, and is not outweighed by countervailing benefits to consumers or competition.

210.    Defendants' conduct was not reasonably avoidable by consumers because consumers reasonably relied on Defendants' packaging representations and lacked practical access to information contradicting those representations at the point of sale.

211.    As a direct and proximate cause of Defendants' unlawful, unfair, and fraudulent conduct, Plaintiffs and Class Members suffered economic injury because they purchased products they otherwise would not have purchased, or paid more than they otherwise would have paid, had they known the truth about the recyclability of the challenged packaging. Plaintiffs and Class Members are entitled to restitution, injunctive relief, attorneys' fees and costs where available, and all other relief permitted by law.

**FIFTH CAUSE OF ACTION**
**Violation of California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of Plaintiffs Alicea, Trudeau, Nelson and the California Class)**

212.    Plaintiffs re-allege and incorporate by reference all preceding factual paragraphs as though fully set forth herein.

213.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq., prohibits making or disseminating, or causing to be made or disseminated, any statement concerning property or services that is untrue or misleading and that is known, or by the exercise of reasonable care should be known, to be untrue or misleading.

42

214. Defendants made, disseminated, and caused to be made and disseminated labeling, advertising, and marketing statements to California consumers concerning the challenged products.

215. Defendants' challenged labeling and advertising statements concerned the characteristics, benefits, uses, quality, and environmental attributes of the challenged products and their packaging.

216. Defendants represented that the challenged LDPE plastic film packaging was recyclable through the "PLEASE RECYCLE OR REUSE THIS BAG" instruction, the chasing-arrows recycling symbol, and the "THIS PACKAGE IS RECYLCABLE" statement.

217. Defendants' statements were untrue and misleading because the challenged packaging is not recyclable through ordinary municipal recycling systems available to a substantial majority of California consumers.

218. Defendants' statements were also untrue and misleading because the challenged packaging does not satisfy California's statutory recyclability standard.

219. Defendants' statements were further misleading because Defendants failed to disclose that LDPE plastic film packaging is not accepted in ordinary curbside recycling programs, may disrupt recycling systems, and may contaminate otherwise recyclable materials.

220. Defendants' false and misleading statements were material to reasonable consumers, including Plaintiffs and Class Members.

221. Defendants knew, or by the exercise of reasonable care should have known, that the challenged recyclability representations were untrue or misleading.

222. Defendants intended that consumers rely on the challenged recyclability representations and related omissions.

223. Plaintiffs and Class Members saw, read, and relied on Defendants' false and misleading statements before purchasing the challenged products.

224. Plaintiffs and Class Members would not have purchased the challenged products, or would have paid less for them, had they known the truth.

225. As a direct and proximate result of Defendants' false and misleading advertising, Plaintiffs and Class Members suffered economic injury.

226. Plaintiffs and Class Members are entitled to restitution, injunctive relief, attorneys' fees and costs where available, and all other relief permitted by law.

**SIXTH CAUSE OF ACTION**
**Violation of California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750, et seq.**
**(On Behalf of Plaintiffs Alicea, Trudeau, Nelson and the California Class)**

227. Plaintiffs re-allege and incorporate by reference all preceding factual paragraphs as though fully set forth herein.

228. California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., prohibits unfair methods of competition and unfair or deceptive acts or practices undertaken in transactions intended to result, or that result, in the sale of goods or services to consumers.

229. Plaintiffs and Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

230. Defendants' products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

231. Plaintiffs' and Class Members' purchases of Defendants' products were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

232. Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that the challenged products and packaging have characteristics, uses, benefits, or qualities that they do not have.

44

233. Specifically, Defendants represented that the challenged LDPE plastic film packaging was recyclable, when in fact the packaging is not recyclable through ordinary municipal recycling systems available to a substantial majority of California consumers.

234. Defendants violated Cal. Civ. Code § 1770(a)(7) by representing that the challenged products and packaging are of a particular standard, quality, or grade when they are of another.

235. Specifically, Defendants represented that the challenged packaging was recyclable and suitable for recycling, when the packaging does not satisfy California's statutory recyclability standard and is not accepted by ordinary municipal recycling systems.

236. Defendants violated Cal. Civ. Code § 1770(a)(9) by advertising goods with intent not to sell them as advertised.

237. Specifically, Defendants advertised the challenged products as packaged in recyclable packaging while selling products packaged in LDPE plastic film that are not recyclable in real-world conditions.

238. Defendants' challenged recyclability representations and omissions were material to Plaintiffs and Class Members.

239. Plaintiffs and Class Members reasonably relied on Defendants' challenged representations and omissions.

240. Plaintiffs and Class Members would not have purchased the challenged products, or would have paid less for them, had they known the truth.

241. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members suffered economic injury.

242. Plaintiffs seek injunctive relief under the CLRA at this time.

243. Plaintiffs provided notice under Cal. Civ. Code § 1782 and, if Defendants fail to provide appropriate relief, Plaintiffs will amend this Complaint to seek statutory damages under the CLRA.

244. By letter dated June 29, 2026, Plaintiffs advised Defendants of their false and misleading claims pursuant to California Civil Code Section 1782(a).

245. Plaintiffs and Class Members are entitled to injunctive relief, attorneys' fees and costs, and all other relief currently permitted by law.

**SEVENTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief**
**28 U.S.C. §§ 2201-2202**
**(On Behalf of Plaintiffs and the Arizona Class and California Class)**

246. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

247. Defendants continue to market and sell products bearing the challenged recyclability representations.

248. Plaintiffs and Class Members would purchase Defendants' products in the future if they did not contain the misleading claims discussed herein.

249. An actual controversy exists regarding whether Defendants may continue representing that their LDPE plastic film packaging is recyclable without disclosing that the packaging is not recyclable through ordinary municipal recycling systems and does not satisfy Arizona, California, and other states' statutory recyclability standards.

250. Defendants' challenged conduct creates a real and immediate threat of future harm to Plaintiffs and Class Members.

251. Plaintiffs seek declaratory relief that Defendants' challenged recyclability representations are false, misleading, deceptive, and/or unlawful.

46

252. Plaintiffs seek injunctive relief requiring Defendants to cease making false or misleading recyclability representations.

253. Plaintiffs seek injunctive relief requiring Defendants to qualify any recyclability claims and disclose material limitations regarding the recyclability of their LDPE plastic film packaging.

254. Plaintiffs seek injunctive relief requiring Defendants to refrain from using the chasing-arrows symbol, resin identification codes in a chasing-arrows symbol, unqualified recycling instructions, or any other symbol or statement directing consumers to recycle the challenged packaging unless the packaging satisfies applicable federal standards and California's recyclability requirements, including Cal. Pub. Res. Code § 42355.51.

255. Plaintiffs seek injunctive relief requiring Defendants to engage in corrective advertising and/or other corrective disclosures as appropriate.

256. Plaintiffs and Class Members lack an adequate remedy at law for the ongoing threat of future deception.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendants as follows:

    a. For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representative of the Class and their counsel as Class Counsel;

    b. A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including compensatory damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

b.  A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including compensatory damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order requiring Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.  A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.  An award of such other and further relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated: July 10, 2026

Respectfully submitted,

Max Federman (AZ S.B. #040246)
**BRIAN TED JONES, PC**
719 N Shartel Ave
Oklahoma City, OK 73102
Telephone: (405) 843-9909
Email: max.federman@briantedjones.com

William B. Federman*
Alex J. Ephraim*
**Federman & Sherwood**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120

48

Donald W. Bivens (AZ Bar No. 005134)
Don Bivens, PLLC
15169 N. Scottsdale Road,
Suite 205
Scottsdale, AZ 85254
Tel: (602) 762-2661
Email: Don@donbivens.com

***Attorneys for Plaintiffs and the Putative Class***
***\*pro hac vice forthcoming***